STATE OF MAINE

*vs.*

INTOXICATING LIQUORS, MAINE CENTRAL RAILROAD COMPANY,
Claimant.

Androscoggin.     Opinion November 23, 1909.

*Intoxicating Liquors. Forfeiture. · " Pure Food Act." Misbranded or Adulterated Liquors. Burden of Proof. U. S. Food and Drugs Act, Approved June 30, 1906.*

1.  Pure intoxicating liquors brought into this State from another State by an interstate common carrier are not liable to forfeiture under the State laws until they have come into the possession of the consignee.

2.  If it be sought to have such liquors declared forfeited before delivery to the consignee, upon the ground that they are misbranded or adulterated within the Act of Congress known as the " Pure Food Act," the burden is on the State to prove such misbranding or adulteration.

3.  When there is no evidence of how the liquors were branded, and no evidence of their " strength, quality or purity " except that they were colored and slightly sweetened by burnt sugar, they cannot be held to be misbranded or adulterated. The court cannot take judicial notice that whiskey cannot be colored and sweetened to some slight extent by burnt sugar without exceeding the limits of the standard prescribed by the " Pure Food Act."

On report.     Judgment for claimant.

Search and seizure process issued by the Municipal Court of Lewiston whereby four gallons of whiskey which had been shipped from Boston, Mass., to Lewiston, Maine, were seized at the station of the Maine Central Railroad Company in said Lewiston. The liquors were duly libelled and at the hearing on the libel the Maine Central Railroad Company appeared and claimed the liquors. The liquors were declared forfeited and the claimant appealed. After the evidence had been taken out in the appellate court the case was reported to the Law Court for determination.

The report of the evidence states as follows:

"It is admitted that this liquor came on a through way bill from Boston, Mass., consigned to W. N. Bridgham, Lewiston, Maine,

under a through rate. It arrived at Lewiston originally on the
third day of January, 1907, and was seized by the officers. It was
libelled and a hearing was had before the Lewiston Municipal Court,
and the liquors were ordered returned to the railroad company by
the court. They were returned to the railroad company on Feb.
14, 1907, and were seized by the officer Feb. 18, 1907. They were
declared forfeited by the Lewiston Municipal Court and an appeal
was taken. The case went to the Law Court on an agreed state-
ment of facts, and a decision was handed down by the Law Court
in December, 1908, ordering the return of the liquors to the rail-
road company. They were returned to the railroad company on
December 10, 1908, and held in the station undelivered until
Jan. 7th, 1909, when they were again seized.

"It is further admitted that W. N. Bridgham, or no one represent-
ing him, has ever claimed of the railroad or anyone else these
liquors, and that so far as the railroad is concerned, at the time of
the seizure no owner was known, nor the consignee.

"ERNEST JORDAN, called for state, sworn.
                    "Direct examination.

"By Mr. Morey.

"Q. What does your analysis show about the liquor?

"A. The liquor was colored, that is all, in that case.

"Q. Colored with what?

"A. Burned sugar.

"Q. In violation of the pure food law?

"(Objected to)

"A. Yes.

                    "Cross examination.

"By Mr. White.

"Q. You say the liquor was colored with sugar?

"A. Yes sir.

"Q. Otherwise there was nothing to indicate adulteration?

"A. No.

"Q. And this burned sugar slightly sweetened the liquor and
colored it?

"A.   Yes sir.

"Q.   And nothing poisonous about the sugar?

"A.   No.

"Q.   Nor deleterious?

"A.   No.

"Q.   And in your opinion was introduced merely for the purpose of coloring?

"A.   That is all, yes.

"Re-direct.

"By Mr. Morey.

"And the coloring would materially affect the value, wouldn't it?

"(Objected to)

"A.   It would effect the salability.

"Q.   And for what reason?

"A.   Well, merely because the market demands a liquor that contains some color — a considerable amount of color."

The case appears in the opinion.

*Frank A. Morey*, County Attorney, for the State.

*White & Carter*, for claimant.

SITTING:   EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, BIRD, JJ.

EMERY, C. J.   Four gallons of whiskey which came from Boston, Mass., to Lewiston, Maine, consigned to W. N. Bridgham were seized at the station of the Maine Central R. R. Co. (the carrier) in Lewiston, as intended for unlawful sale in this State. The liquors arrived in Lewiston, Jan'y 3, 1907 and were then seized but were returned to the company Feb'y 14. They were again seized Feb'y 18, and held in the custody of the officers until Dec. 10, 1908 when they were again returned to the company. They were again seized upon the process in this case Jan'y 7, 1909. No notice was given Bridgham of the arrival of the liquors, and neither he nor any one for him has ever claimed them. The railroad company, however, did not know the consignee or the owner,

It appears, therefore, that after arrival the liquors were in the actual custody of the railroad company four days in February 1907, and twenty-eight days in December and January 1908-9, or thirty-two days in all. There was admittedly no actual delivery to the consignee, and under the authority of *State* v. *Intoxicating Liquors*, 104 Maine, 463, we must hold there was no constructive delivery. No one for the consignee had called for and receipted for the liquors as in *State* v. *Intoxicating Liquors, the Grand Trunk Railway Company, Claimant*, 106 Maine, page 138, and no facts are stated from which can be inferred any agreement or understanding between the consignee and the carrier for the latter to hold the liquors for the consignee. The liquors must therefore be returned unless it appears that they were adulterated or misbranded and hence unlawfully brought into this State in violation of the Act of Congress known as "The Pure Food Act" of 1906.

The burden is of course upon the State to prove such adulteration or misbranding. There is no evidence at all as to how they were branded, or that they were not branded, nor any evidence as to their "strength, quality or purity" except that the liquors were colored and slightly sweetened by burnt sugar. There was no evidence as to the extent of the coloring, or the quantity or percentage of sugar used, or that it was harmful, and no evidence that it increased the residuum above that permitted by the Pure Food Act. The court is not bound to take judicial notice that liquors cannot be colored to some extent by burnt sugar without thus increasing the residuum. We hold, therefore, that the evidence does not prove the liquors to be within the prohibition of the Pure Food Act; hence they must be returned to the claimant carrier even if they were intended for unlawful sale.

*Liquors ordered returned.*